Michael Kind, Esq.
Nevada Bar No.: 13903
**KIND LAW**
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
(702) 337-2322
(702) 329-5881 (fax)
mk@kindlaw.com

George Haines Esq.
Nevada Bar No. 9411
Gerardo Avalos Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, Nevada 89123
(702) 880-5554
(702) 385-5518 (fax)
Ghaines@freedomlegalteam.com
*Counsel for Plaintiff William Sanseverino*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| William Sanseverino, | Case No.: |
| Plaintiff, | **Complaint for damages under the FCRA, 15 U.S.C. § 1681** |
| v. | |
| Trans Union, LLC, Experian Information Solutions, Inc., Equifax Information Services, Inc., Rocket Mortgage, LLC, Westlake Services, LLC dba Westlake Financial Services and Quicken Loans, Inc., | |
| Defendants. | |

COMPLAINT                    - 1 -

**Introduction**

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. William Sanseverino ("Plaintiff"), by counsel, brings this action to challenge the actions of Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, Inc. ("Equifax"), Rocket Mortgage, LLC ("Rocket Mortgage"), Westlake Services, LLC dba Westlake Financial Services ("Westlake") and Quicken Loans, Inc. ("QL") and jointly as "Defendants," with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendants' failure to properly investigate

1  Plaintiff's disputes.

2  4. Plaintiff makes these allegations on information and belief, with the exception of
3     those allegations that pertain to Plaintiff, which Plaintiff alleges on personal
4     knowledge.

5  5. While many violations are described below with specificity, this Complaint alleges
6     violations of the statutes cited in their entirety.

7  6. Unless otherwise stated, all the conduct engaged in by Defendants took place in
8     Nevada.

9  7. Any violations by Defendants were knowing, willful, and intentional, and
10    Defendants did not maintain procedures reasonably adapted to avoid any such
11    violations.

12 8. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's
13    creditworthiness.

14                          **Jurisdiction and Venue**

15 9.  Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (federal question
16     jurisdiction); 15 U.S.C. § 1681.

17 10. This action arises out of Defendants' violations of the FCRA.

18 11. Venue is proper in the United States District Court for the District of Nevada
19     pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County,
20     Nevada and because Defendants are subject to personal jurisdiction in Clark
21     County, Nevada as they conduct business here. Venue is also proper because the
22     conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

23                              **Parties**

24 12. Plaintiff is a natural person living in Clark County, Nevada. In addition, Plaintiff
25     is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

26 13. Defendants are each a corporation or business entity doing business in the State
27     of Nevada.

COMPLAINT                    - 3 -

14. Rocket Mortgage, QL, and Westlake are furnishers of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to consumer credit reporting agencies.

15. Experian, Trans Union, and Equifax regularly assemble and/or evaluate consumer credit information for the purposes of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Each entity is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

16. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

## GENERAL ALLEGATIONS
## — THE VIOLATIONS —
### Re: Bankruptcy Case No. (20-13126)

17. On or about June 29, 2020, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 et seq. (the "bankruptcy").

18. The obligations to each creditor-furnisher herein (as applicable) were scheduled in the bankruptcy and each respective creditor, or its predecessor in interest, received notice of the bankruptcy.

19. Plaintiff's Chapter 13 Plan was confirmed by the Bankruptcy Court (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

20. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc.* (*In re Padilla*), 379 B.R. 643, 649, 2007 Bankr. LEXIS

2655, *1 (Bankr. S.D. Tex. 2007).

21. None of the creditor-furnishers named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

22. No creditor-furnisher named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 et seq.

23. Further, while the automatic stay was in effect during the bankruptcy, it was illegal and inaccurate for any creditor-furnisher named herein to report any post-bankruptcy derogatory collection information, pursuant to the Orders entered by the bankruptcy Court.

24. However, Defendants either reported or caused to be reported inaccurate information as discussed below.

25. Additionally, Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

26. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

27. Courts rely on such guidance to determine furnisher liability. *See, e.g., In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

28. On information and belief, Defendants adopted and at all times relevant implemented the Metro 2 format.

29. On information and belief, each furnisher named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of

1  disputed information.

2  30. Each furnisher named herein failed to conform to the Metro 2 Format when

3      reporting on Plaintiff's accounts after Plaintiff filed bankruptcy as further set

4      forth below.

5  31. In turn, each of the credit reporting agencies named herein, reported and re-

6      reported the inaccurate information, thus violating their duty to follow reasonable

7      procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b)

8      when preparing a consumer report.

9  32. To this end, the adverse reporting on Plaintiff's consumer report departed from

10     the credit industry's own reporting standards and was not only inaccurate, but

11     also materially misleading under the CDIA's standards as well.

12 33. A "materially misleading" statement is concerned with omissions to credit

13     entries, that in context create misperceptions about data that may otherwise be

14     factually accurate. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163

15     (9th Cir. 2009).

16              **—THE TRANS UNION VIOLATIONS —**

17     **Trans Union and Rocket Mortgage Misreported Consumer Information**

18          **Re: Rocket Mortgage Account No. ****0699**

19 34. In Plaintiff's consumer report from Trans Union, dated November 21, 2021,

20     Trans Union and Rocket Mortgage inaccurately reported on Plaintiff's credit

21     report by suppressing Plaintiff's current payment status and ongoing timely

22     payments to Rocket Mortgage.

23 35. Specifically, Plaintiff's account balance with Rocket Mortgage was listed as $0

24     and his on-time monthly payments were not accounted for. This was inaccurate,

25     misleading, and derogatory because Plaintiff's account with Rocket Mortgage

26     was open and current, and Plaintiff continued to pay timely each month.

27 36. On April 12, 2022, Plaintiff disputed the inaccurate reporting pursuant to 15

       U.S.C. § 1681i, by notifying Trans Union in writing of the inaccurate, misleading,

1    and derogatory information.

2    37.    Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union,

3    requesting the above inaccurate information be updated, modified, or corrected.

4    38.    Trans Union was required to conduct a reinvestigation into the disputed

5    information on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

6    39.    Upon information and belief, Trans Union timely notified Rocket Mortgage

7    regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

8    40.    Upon information and belief, Trans Union provided Rocket Mortgage with a

9    notice regarding Plaintiff's dispute under 15 U.S.C. § 1681i(a)(5)(A).

10   41.    Upon information and belief, Trans Union provided all relevant information to

11   Rocket Mortgage regarding Plaintiff's dispute, as required under 15 U.S.C. §

12   1681i(a)(2).

13   42.    On or around April 15, 2022, Plaintiff received notice that Trans Union and

14   Rocket Mortgage investigated and reinvestigated Plaintiff's dispute, as required

15   under 15 U.S.C. § 1681i(a)(6).

16   43.    A reasonable investigation by Trans Union and Rocket Mortgage would have

17   determined that they were reporting the above disputed information inaccurately

18   and should have reported Plaintiff's on time payments.

19   44.    Trans Union and Rocket Mortgage failed to review all relevant information

20   provided by Plaintiff in Plaintiff's dispute, as required by and in violation of 15

21   U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

22   45.    Trans Union and Rocket Mortgage still reported Plaintiff's account with Rocket

23   Mortgage as having a balance of $0 and did not account for any on-time monthly

24   payments. This was inaccurate, misleading, and derogatory because Plaintiff's

25   account with Rocket Mortgage was open and current, and Plaintiff continued to

26   pay timely each month.

27   46.    In turn, Trans Union re-reported the inaccurate information, thus violating its

duty to follow reasonable procedures to assure maximum possible accuracy under

15 U.S.C. § 1681e(b) when preparing a consumer report.

47. Trans Union and Rocket Mortgage, upon receipt of Plaintiff's dispute, failed to investigate or reinvestigate with respect to the disputed information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

48. Due to Trans Union and Rocket Mortgage's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

49. Trans Union and Rocket Mortgage's continued inaccurate, misleading, and derogatory reporting was knowing and willful, in light of their knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

50. Also, because of Trans Union and Rocket Mortgage's continued inaccurate, misleading, and derogatory reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress

51. By inaccurately reporting consumer information after notice and confirmation of their errors, Trans Union and Rocket Mortgage failed to take the appropriate measures as required under 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

**Trans Union and Westlake Misreported Consumer Information Re: Westlake Account No. ****1353**

52. In Plaintiff's consumer report from Trans Union dated November 21, 2021, Trans Union and Westlake inaccurately reported on Plaintiff's credit report by suppressing Plaintiff's current payment status and ongoing timely payments to Rocket Mortgage.

53. Specifically, Plaintiff's account balance with Rocket Mortgage was listed as $0

and his on-time monthly payments were not accounted for. This was inaccurate, misleading, and derogatory because Plaintiff's account with Westlake was open and current, and Plaintiff continued to pay timely each month.

54. On April 12, 2022, Plaintiff disputed the inaccurate reporting pursuant to 15 U.S.C. § 1681i, by notifying Trans Union in writing of the inaccurate, misleading, and derogatory information.

55. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate information be updated, modified, or corrected.

56. Trans Union was required to conduct a reinvestigation into the disputed information on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

57. Upon information and belief, Trans Union timely notified Westlake regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

58. Upon information and belief, Trans Union provided Westlake with a notice regarding Plaintiff's dispute under 15 U.S.C. § 1681i(a)(5)(A).

59. Upon information and belief, Trans Union provided all relevant information to Westlake regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

60. On or around April 15, 2022, Plaintiff received notice that Trans Union and Westlake investigated and reinvestigated Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(6).

61. A reasonable investigation by Trans Union and Westlake would have determined that they were reporting the above disputed information inaccurately.

62. Trans Union and Westlake failed to review all relevant information provided by Plaintiff in Plaintiff's dispute, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

63. Trans Union and Westlake still reported Plaintiff's account with Westlake as having a balance of $0 and did not account for any on-time monthly payments.

64. This was inaccurate, misleading, and derogatory because Plaintiff's account was open and current, and Plaintiff continued to pay timely each month.

65. In turn, Trans Union re-reported the inaccurate information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

66. Trans Union and Westlake, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

67. Due to Trans Union and Westlake's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

68. Trans Union and Westlake's continued inaccurate, misleading, and derogatory reporting was knowing and willful, in light of their knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

69. Also, because of Trans Union and Westlake's continued inaccurate, misleading, and derogatory reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress.

70. By inaccurately reporting consumer information after notice and confirmation of their errors, Trans Union and Westlake failed to take the appropriate measures as required under 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

### —THE EXPERIAN VIOLATIONS —

### Experian and QL Misreported Consumer Information
### and Failed to Investigate Plaintiff's Dispute
### Re: QL Account Nos. ****7336 and ****7340

71. In Plaintiff's consumer report from Experian, dated November 11, 2021, Experian and QL inaccurately reported on Plaintiff's credit report by suppressing

Plaintiff's current payment status and ongoing timely payments to QL.

72. Specifically, Plaintiff's account balances with QL were listed as $0 and his on-time monthly payments were not accounted for. This was inaccurate, misleading, and derogatory because Plaintiff's accounts were open and current, and Plaintiff continued to pay timely each month.

73. On April 12, 2022, Plaintiff disputed the inaccurate reporting pursuant to 15 U.S.C. § 1681i, by notifying Experian in writing of the inaccurate, misleading, and derogatory information.

74. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate information be updated, modified, or corrected.

75. Experian was required to conduct a reinvestigation into the disputed information on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

76. Upon information and belief, Experian timely notified QL regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

77. Upon information and belief, Experian provided QL with a notice regarding Plaintiff's dispute under 15 U.S.C. § 1681i(a)(5)(A).

78. Upon information and belief, Experian provided all relevant information to QL regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

79. Plaintiff never received any notification from Experian that Experian and QL investigated and reinvestigated Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(6).

80. A reasonable investigation by Experian and QL would have determined that they were reporting the above disputed information inaccurately.

81. Experian and QL failed to review all relevant information provided by Plaintiff in Plaintiff's dispute, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

82. Upon information and belief, Experian and QL continued to report the inaccurate information.

83. Experian and QL, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

84. Due to Experian and QL's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

85. Experian and QL's continued inaccurate, misleading, and derogatory reporting was knowing and willful, in light of their knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

86. Also, because of Experian and QL's continued inaccurate, misleading, and derogatory reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress.

87. By inaccurately reporting consumer information after notice and confirmation of their errors, Experian and QL failed to take the appropriate measures as required under 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

## —THE EQUIFAX VIOLATIONS—

### Equifax and Rocket Mortgage Misreported Consumer Information
### Re: Rocket Mortgage Account No. ****7977

88. In Plaintiff's consumer report from Equifax, dated November 11, 2021, Equifax and Rocket Mortgage inaccurately reported on Plaintiff's credit report by suppressing Plaintiff's current payment status and ongoing timely payments to Rocket Mortgage.

89. Specifically, Plaintiff's account statuses with Rocket Mortgage were listed as "Included in Chapter 13" and all of his on-time monthly payments were not

accounted for. This was inaccurate, misleading, and derogatory because Plaintiff's accounts with Rocket Mortgage were open and current, and Plaintiff continued to pay timely each month.

90. On April 12, 2022, Plaintiff disputed the inaccurate reporting pursuant to 15 U.S.C. § 1681i, by notifying Equifax in writing of the inaccurate, misleading, and derogatory information.

91. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate information be updated, modified, or corrected.

92. Equifax was required to conduct a reinvestigation into the disputed information on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

93. Upon information and belief, Equifax timely notified Rocket Mortgage regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

94. Upon information and belief, Equifax provided Rocket Mortgage with a notice regarding Plaintiff's dispute under 15 U.S.C. § 1681i(a)(5)(A).

95. Upon information and belief, Equifax provided all relevant information to Rocket Mortgage regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

96. However, on Plaintiff's May 6, 2022, consumer report, Equifax and Rocket Mortgage continued to report the information inaccurately and failed to update Plaintiff's consumer report to report Plaintiff's current status and on-time payment history.

97. A reasonable investigation by Equifax and Rocket Mortgage would have determined that they were reporting the above disputed information inaccurately.

98. Equifax and Rocket Mortgage failed to review all relevant information provided by Plaintiff in Plaintiff's dispute, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

99. Upon information and belief, Equifax and Rocket Mortgage continued to report the inaccurate information.

100. Equifax and Rocket Mortgage, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

101. Due to Equifax and Rocket Mortgage's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

102. Equifax and Rocket Mortgage's continued inaccurate, misleading, and derogatory reporting was knowing and willful, in light of their knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

103. Also, because of Equifax and Rocket Mortgage's continued inaccurate, misleading, and derogatory reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress.

104. By inaccurately reporting consumer information after notice and confirmation of their errors, Equifax and Rocket Mortgage failed to take the appropriate measures as required under 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

### Plaintiff's damages

105. In addition to Plaintiff's creditworthiness being negatively impacted, Plaintiff suffered emotional distress and mental anguish because of Defendants' actions described herein. In addition, Plaintiff incurred out-of-pocket costs and time in attempts to dispute Defendants' actions. Plaintiff further suffered humiliation and embarrassment.

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. § 1681

106. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

107. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681, et seq.

108. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

109. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### Prayer for relief

110. Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- An award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1); and
- Any other relief that this Court deems just and proper.

## Jury Demand

111. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 9, 2022.

Respectfully submitted,


KIND LAW

 /s/ Michael Kind
Michael Kind, Esq.
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123


FREEDOM LAW FIRM

 /s/ George Haines
George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 350
Las Vegas, Nevada 89123
*Counsel for Plaintiff William Sanseverino*

COMPLAINT